UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WINSTON SPANN,

    Plaintiff,

v.                                      CASE No.  8:04-CV-2322-T-TGW

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

## O R D E R

The plaintiff in this case seeks judicial review of the denial of his claim for supplemental security income payments.[1] Because the decision of the Commissioner of Social Security fails to show a proper assessment of the plaintiff's allegation that he meets a listed impairment regarding mental retardation and does not adequately evaluate an alleged limitation due to leg edema, the decision shall be reversed and the matter remanded for further consideration.

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 17).

I.

The plaintiff, who was 49 years old at the time of the administrative hearing and who has a tenth grade education, has worked as an electrician's helper, janitor, galvanizer, construction worker, laborer, and battery assembler (Tr. 97). He filed a claim for supplemental security income payments, alleging that he became disabled due to severe back pain caused by bulging discs (Tr. 96). The claim was denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of degenerative disc disease and chronic lumbar sprain/strain (Tr. 12). He concluded that these impairments limited the plaintiff to performing a wide range of medium work, but did not preclude him from performing his past work as a janitor/cleaner, battery tester, battery assembler, electrician's helper, and galvanized steelworker (Tr. 17, 18). Alternatively, the law judge determined that, based upon the testimony of a vocational expert, the plaintiff could perform the jobs of kitchen helper and warehouse worker (Tr. 19). Accordingly, the law judge decided that the

plaintiff was not disabled. The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D). The Act provides further that a claimant is not disabled if he is capable of performing his previous work. 42 U.S.C. 1382c(a)(3)(B).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402

U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

## III.

A. The focus of the plaintiff's argument is that the law judge failed to develop the record regarding his low intelligence (IQ) scores, which

may show that the plaintiff meets a listing in Appendix 1 (Doc. 24, pp. 6-8, 9). See 20 C.F.R. Part 404, Subpart P, App. 1, listing 12.05 C.

A condition listed in Appendix 1 is considered so severe that a plaintiff who meets, or equals, a listing is deemed disabled without regard to vocational considerations. Wilkinson o/b/o Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). Thus, the issue of whether the plaintiff meets, or equals, a listing comes in the sequential analysis before the issues of whether the plaintiff can return to prior work, or perform other jobs in the national economy. See 20 C.F.R. 416.920. Therefore, if the plaintiff meets, or equals, a listed impairment, the issues upon which the law judge found the plaintiff to be not disabled would not be reached.

The plaintiff bears the burden of showing that he meets, or equals, a listing. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). Moreover, "when a claimant contends that he has an impairment meeting the listed impairments entitling him to an adjudication of disability under regulation 404.1520(d) [or 416.920(d)], he must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must

-5-

present medical evidence which describes how the impairment has such an equivalency." Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986).

In this case, the pertinent listing is 12.05 C of Appendix 1, which states:

> 12.05 *Mental Retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . . .
> C. A valid verbal, performance, or full scale IQ score of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.[2]

The plaintiff in this case received IQ scores of 60, 65, and 67 on three IQ tests administered by the Department of Corrections (DOC) in 1995

---

[2] Furthermore, because listing 12.05 was intended, as pertinent here, to cover the impairment of mental retardation, it is not enough simply to rely upon IQ scores and, in the case of 12.05 C, an additional significant impairment. Thus, in Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997) (emphasis added), the court said that, "[t]o be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22."

(Tr. 231-32). These IQ scores seemingly meet the IQ criterion of listing 12.05 C. Further, the plaintiff's severe impairments of degenerative disc disease and chronic lumbar sprain/strain seem to meet the additional physical work-related impairment demanded by that listing. See Edwards by Edwards v. Heckler, 755 F.2d 1513 (11th Cir. 1985). Thus, there is evidence in the record that potentially meets the criteria of listing 12.05 C.

      The plaintiff's attorney discussed the plaintiff's low IQ scores with the law judge at the administrative hearing (Tr. 65-66). The plaintiff's attorney candidly acknowledged that there are indications in the record that these scores may be inaccurately low, but contended that follow-up on the issue was necessary because, as indicated, the plaintiff may satisfy a listing level impairment if the scores are valid[3] (Tr. 66). Consequently, the law judge stated that he would refer the plaintiff for a "psychological examination with IQ testing" (Tr. 66). However, this IQ testing was not performed and the law

---

[3] In this regard, it was noted on the DOC's screening sheet that the accuracy of the plaintiff's IQ scores was questionable because the plaintiff was ill at the time the tests were administered and he had performed within normal limits on a previous test (see Tr. 232). Further, the plaintiff's attorney acknowledged at the hearing that the plaintiff did not exhibit mental deficiencies consistent with such scores (Tr. 65).

judge's decision does not explain why it was not done.[4] Under the circumstances, which include conflicting evidence regarding the plaintiff's intelligence, the law judge's suggestion that IQ testing should be performed was clearly reasonable.

Furthermore, additional IQ testing was not rendered moot by a determination that the plaintiff's low IQ scores are not valid. Thus, a law judge may reject IQ scores where they are inconsistent with other medical evidence or the plaintiff's daily activities and behavior. See Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992).[5] However, since the law judge did not even acknowledge the plaintiff's low IQ scores in his decision, it is not clear whether he rejected them, or overlooked them. If he rejected them, he needed to state the reasons for that determination. Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986) (the law judge "must state specifically the weight accorded each item of evidence and the reasons for his decision" on

---

[4] Recently, in another Social Security case, a law judge appropriately requested a neuropsychological evaluation of the plaintiff, but the administrative individual to whom that request was made refused to obtain it. Hinson v. Barnhart, 8:04-CV-2258-T-TGW, Admin. Trans., p. 15. It is unclear in this case whether the request for an IQ test was administratively denied or was not sufficiently specified (see Tr. 369).

[5] Moreover, the plaintiff may well be unable to show that, even if his IQ scores of less than 70 are valid, he manifested deficits in adaptive functioning as discussed in Crayton v. Callahan, supra, 120 F.3d at 1219.

that evidence). Therefore, this matter should be remanded for further consideration because, not only did the law judge fail to obtain new IQ tests, as he had promised, but he also did not evaluate the evidence in the record of the plaintiff's low IQ scores.

Frankly, it seems doubtful to me that the remand for consideration of the plaintiff's IQ provides much promise for an award of benefits for the various reasons that have been noted. However, it is not my role to decide whether the plaintiff's suggestion of mental retardation has merit, but that task, rather, is assigned to the law judge (or the Appeals Council). Because the law judge failed to carry out his duty on that issue, a remand is necessary.[6]

B. Next, the plaintiff contends that the law judge failed to address the severity of the plaintiff's leg edema and its accompanying limitations (Doc. 24, p. 10). The law judge acknowledged that there is evidence that the plaintiff suffers from leg edema (Tr. 15). Further, the law judge stated that Dr. Dennis F. Bandyk recommended intermittent leg

---

[6]Just as it is not my role to decide the plaintiff's suggestion of mental retardation, it is also not my role to decide whether the plaintiff can perform medium exertional work. If it were, I doubt that I would agree that the plaintiff, in light of his back condition, could lift fifty pounds occasionally and twenty-five pounds frequently.

elevation above the heart for this condition (Tr. 14). Specifically, Dr. Bandyk recommended that the plaintiff engage in "[i]ntermittent leg elevation above the level of the heart 30 minutes out of every four hours" in order to relieve the edema (Tr. 319).

The law judge, however, did not evaluate this limitation in his decision. This is an important piece of evidence because the vocational expert testified that taking two unscheduled breaks for thirty minutes at a time during the workday would preclude the plaintiff from performing any job (Tr. 62). Apparently, the law judge rejected the limitation of leg elevation, since he found that the plaintiff could return to prior work. However, he needs to explain why he discounted this evidence. Thus, the law judge's failure to address the doctor's treatment recommendation violates the principle that the law judge "must state specifically the weight accorded each item of evidence and the reasons for his decision" regarding that evidence. Gibson v. Heckler, supra, 779 F.2d at 623. In the absence of an explanation by the law judge on this point, meaningful judicial review is not possible. Hudson v. Heckler, 755 F.2d 781, 785-86 (11th Cir. 1985).

C.   Finally, the plaintiff argues that the law judge failed to properly assess his sleep apnea (Doc. 24, p. 9). The law judge appears to

reject the sleep apnea as a severe impairment because the record suggests that a treatment of continuous positive airway pressure (CPAP) could resolve the apnea (Tr. 333-34).  The plaintiff argues, without any citation to the record or legal authority, that this is an insufficient basis for a finding of non-severity. Because this case is being remanded on other grounds, this issue need not be addressed.  However, if the plaintiff wishes to pursue this matter, it would be prudent for him to obtain evidence that the CPAP treatment would not resolve the problem.

It is, therefore, upon consideration

ORDERED:

That the defendant's decision is hereby **REVERSED**, and this case is **REMANDED** for further consideration.  The Clerk shall enter judgment in accordance with this Order.

DONE and ORDERED at Tampa, Florida, this 3rd day of March, 2006.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE